**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**
**MADISON DIVISION**

| | | |
|---|---|---|
| **JOAN LOCH,** | § | **Civil Action No. 3:22-cv-00213-JDP** |
| **Individually and on behalf** | § | |
| **of all others similarly situated** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **AMERICAN FAMILY MUTUAL** | § | |
| **INSURANCE COMPANY, S.I.** | § | |
| | § | |
| *Defendant.* | § | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' AMENDED UNOPPOSED**
**MOTION FOR SETTLEMENT APPROVAL AND DISMISSAL WITH PREJUDICE**

**I.**
**INTRODUCTION**

This proposed settlement resolves the wage and hour lawsuit between Plaintiff Joan Loch and

the Opt-In Plaintiffs ("Plaintiffs"), and Defendant American Family Mutual Insurance Company, S.I.

("Defendant" or "AmFam") (collectively, the "Parties"). Plaintiffs alleged violations of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. 201–19, and Minnesota Wage Statutes (the "Lawsuit"). Although

Defendant denies any and all liability, the Parties have agreed to a settlement, the terms of which are

defined and described in the Stipulation of Settlement and Release ("Settlement Agreement"), filed

under seal. *See* ECF No. 67.[1] Each Plaintiff has executed the Settlement Agreement and agrees to the

terms included therein.

---

[1] This Court had previously denied Plaintiffs' Unopposed Motion for Settlement Approval without prejudice. *See* ECF No. 68. In the Order, the Court identified deficiencies in the Settlement Agreement itself and requested additional information pertaining the Settlement Agreement as a whole. By this Amended Motion, Plaintiffs have provided the information requested by the Court so it may complete its analysis as to the reasonableness of the Settlement Agreement. Plaintiffs also note that each Plaintiff has executed the Settlement Agreement. *See* Amended Declaration of W. Clif Alexander, attached as Exhibit 1.

The Settlement Agreement satisfies the criteria for approval of an FLSA collective action settlement because it resolves a *bona fide* dispute, was reached after contested litigation, and was the result of arms-length settlement negotiations between experienced wage and hour litigators. Accordingly, Plaintiffs respectfully request that the Court issue an order finding that the Settlement Agreement is a fair and reasonable resolution of a *bona fide* dispute, approving the service award for Named Plaintiff, approving the requested attorneys' fees and expenses and dismissing the underlying claims with prejudice.

## II.
## PERTINENT FACTS

AmFam provides multiple lines of insurance to clients across the United States and today has more than 10,000 employees and 3,000 agents.[2] Plaintiff Loch filed suit against AmFam in 2022, alleging that AmFam misclassified her as exempt from the protections of the Fair Labor Standards Act ("FLSA") and thus failed to pay her the overtime compensation she was legally entitled to. During the course of the litigation, (7) individuals opted-in to become party plaintiffs.

After the Court denied Plaintiffs' motion for conditional certification, with prejudice, the Parties agreed to explore informal resolution in an effort to avoid the expenses and delays associated with trial on the merits. To that end, Defendant provided information relevant to the Plaintiffs' employment circumstances with it. In addition to reviewing the employment information provided by Defendant, Plaintiffs' Counsel also reviewed documents provided by the Plaintiffs and conducted extensive interviews with Plaintiffs. This insured Plaintiffs' Counsel fully understood the merits of Plaintiffs' claims and was able to appropriately evaluate their available damages. After a full review of the information obtained and open and full debate over the legal and factual issues, and after engaging in rigorous settlement negotiations, the Parties, with the assistance of Counsel, agree that the

---

[2] https://www.amfam.com/about/our-story

negotiated terms of the Settlement Agreement represent a fair, reasonable, and just compromise of the disputed issues.

With compromise from both sides, the Parties reached the Settlement Agreement now before the Court. The negotiations leading to this settlement were adversarial, non-collusive, and conducted at arms' length. The Parties share an interest in fully and finally resolving the issues raised in this action. Because the Parties recognize the expense and risks associated with prosecution and defense through trial and any possible appeal, as well as the risk of uncertainty of the outcome inherent in any litigation, they agree to be bound by the Settlement Agreement which they now ask this Court to approve. The Parties have conditioned the overall Settlement upon the Court's approval of all settlement terms.

### III.
### SUMMARY OF THE SETTLEMENT TERMS

**A.    The Settlement Fund**

The Settlement Agreement establishes a Class Fund of ▮▮▮▮▮▮ to settle claims against Defendant. ECF No. 67, ¶ 2.3. This amount covers Plaintiffs' awards, a modest service award for Plaintiff Loch, and third-party administrative fees and costs associated with allocation and disbursement of the settlement proceeds. *See id.* The Parties separately negotiated the amount of attorneys' fees and costs to be paid to Plaintiffs' Counsel. Plaintiffs' Counsel will ask this Court to approve a fee award of ▮▮▮▮▮▮ In total, Defendant has agreed to pay the Gross Settlement Amount of ▮▮▮▮▮ inclusive of fees and costs. *See id.* at ¶ 2.7.

**B.    Allocation Formula**

Settlement Collective Members will be paid their *pro rata* share of the Net Settlement Payment[3] based on the number of weeks they worked for Defendant during the Collective Period. Plaintiffs'

---

[3] The Net Settlement Payment is calculated by the service award and third-party administrator fees from the Class Fund. *See* ECF No. 60, ¶ 2.9

Counsel has performed these calculations and the totals each Plaintiff will receive are provided in Exhibit A to the Settlement Agreement. Each Plaintiffs' damages will be allocated such that 50% of their damages is classified as unpaid wages and will be reflected on a W-2 tax form, and 50% of their damages will be classified as penalties and reflected on a 1099 tax form. This distinction recognizes that Plaintiffs are entitled to wages and penalties under the FLSA and ensures that all damages are thus properly classified for tax treatment.

**C.    Settlement Timeline**

Within ten (10) days of the date this Court enters an order approving the Settlement Agreement and dismissing this action with prejudice, Defendant will deposit the Class Fund into an account created by ILYM Consulting, Inc., the company retained to serve as the Settlement Administrator.[4] *See* ECF No. 60, ¶ 7.2. Within ten (10) days of receipt of the Class Fund, the Settlement Administrator shall distribute the settlement checks to Plaintiffs with a notice explaining that this litigation has settled.  Plaintiffs will have 180 days after the original mailing date to cash or otherwise deposit their settlement checks.  Any funds associated with uncashed settlement checks after that date shall be sent to the state unclaimed property division of the state where the Plaintiff was last employed by Defendant.

---

[4] This Court had requested additional information detailing why the third-party administrator's ("TPA") fees are reasonable in this case. The TPA will be responsible for ensuring that the settlement administration is completed according to the terms of the Settlement Agreement. This includes creating a Qualified Settlement Fund, receiving the Gross Settlement Amount, and making all distributions. While the check disbursement is not complicated in a small case such as this one, a TPA is necessary to ensure that taxes are appropriately reported to the Internal Revenue Service ("IRS") and the relevant State for income tax purposes. The TPA will also insure that the correct tax forms are issued to Plaintiffs and Plaintiffs' Counsel.

## IV.
## ARGUMENT

### A.    Standard of Review

Although the Seventh Circuit has not set forth specific guidelines for approval of an FLSA settlement, district courts in the Seventh Circuit have followed the one-step approval guidelines set forth by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States. See Hoaglan v. Grede Holdings LLC*, No. 20-cv-425-pp, 2022 WL 2703854, at *2 (E.D. Wis. July 12, 2022) (citing *Rambo v. Global Diversified, Inc., et al.*, No. 4:20-cv-04212-SLD-JEH, 2021 WL 262556, at *1, n.2 (C.D. Ill. Jan. 26, 2021) (quoting "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.") "If the proposed settlement is 'a fair and reasonable resolution of a bona fide dispute' over FLSA provisions, courts may approve the agreements to encourage settlement of litigation" *Id.* (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)).

Collective actions under Section 216(b) of the FLSA require workers to affirmatively opt-in to the litigation, unlike a class action pursuant to Federal Rule of Civil Procedure 23. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 73–74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."); *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) ("While Congress could have imported the more stringent criteria for Collective certification under Fed. R. Civ. P. 23, it has not done so in the FLSA."); *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 594 (S.D. Ohio 2002) ("[I]n an FLSA "opt-in" collective action the requirements need not be strictly observed because there are no absent Class Members for the court to protect."). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *Thompson v.*

5

*Bruister & Assocs., Inc.*, 967 F. Supp. 2d 1204, 1222 (M.D. Tenn. Aug. 23, 2013). Accordingly, the exacting standards for approval of a Class Action settlement under Rule 23 do not apply to an FLSA settlement under the collective action provisions of 29 U.S.C. § 216(b). *Crawford*, 2008 WL 4724499, at *3.

## B.    The Settlement Is Fair and Reasonable and Should Be Approved

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc.,* 679 F.2d at 1355; *Watt v. Fox Rest. Venture*, No. 17-2104, 2020 WL 9607045, at *1 (C.D. Ill. Feb. 21, 2020), *report and recommendation adopted*, No. 17-CV-02104, 2020 WL 9607051 (C.D. Ill. Mar. 13, 2020).

When reviewing FLSA settlements for approval, courts may consider the following factors:

> (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceeding and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of the defendants to withstand a larger judgment;[5] (6) the range of reasonableness of the settlement fund in light of the best possible recovery; and (7) the range of reasonableness of the settlement fund in light of all the risks of litigation.

*Hoaglan*, 2022 WL 2703854, at *2 (citing *Paredes v. Monsanto Co. et al.*, No. 4:15-CV-088 JD, 2016 WL 1555649, at *2 (N.D. Ind. Apr. 18, 2016)).

The FLSA Settlement in this case meets the standard for approval. The Settlement was the result of contested litigation with significant data exchanged between the Parties and arm's-length negotiations. Recognizing the uncertain legal and factual issues involved, the Parties reached the Settlement after extensive negotiations. At all times during the settlement negotiation process, negotiations were conducted at arms'-length. The Class Fund is substantial in light of the nature of

---

[5] Case law suggests this factor bears little weight in the overall analysis. *See Hoaglan*, 2022 WL 2703854, at *3 ("The motion contains no information as to the fifth factor—the ability of the defendant to withstand a larger judgment."); *see also Paredes*, 2016 WL 1555649, at *2 (overlooking the fifth factor). Nevertheless, given the current uncertainty in today's economy, a concrete resolution now is more beneficial to the Collective than prolonging litigation for a potentially larger payout in the uncertain future.

the off-the-clock claims alleged by Plaintiffs. The proposed allocation of the Settlement is also reasonable. It reflects the proportion of damages owed to each eligible Settlement Collective Member based on their total workweeks of employment with Defendant during the relevant window of recovery.

According to the Settlement Agreement, awards in this case will provide a significant recovery for the Settlement Collective Members' claims. This Settlement constitutes a substantial recovery for all Collective Members and is calculated to ensure appropriate proportionality dependent on the total workweeks worked by each Plaintiff.

### 1. The Complexity, Expense, and Likely Duration of the Litigation/The Stage of the Proceeding and the Amount of Discovery Completed

In evaluating a proposed collective settlement, a court also must weigh the risks, expense and delay the plaintiffs would face if they continued to prosecute the litigation through trial and appeal against the amount of recovery provided to the collective in the proposed settlement. *See id* (acknowledging the benefit of settlement in the early stages of a lawsuit).

Here, if not for the Settlement, the case would have continued to be fiercely contested by the Parties. Defendant, who is represented by highly capable and well-versed wage and hour counsel, have demonstrated its commitment to defend the case through trial and beyond, if necessary. Should this case continue before this Court, extensive discovery remains as to the merits of the underlying claims, including many depositions of Plaintiffs, written discovery, and likely the engagement of costly expert witnesses. Additionally, the Parties would likely brief and file dispositive motions.

The expense of continued litigation would be further substantial as it is unlikely that dispositive motions would be granted. Misclassification cases, such as this one, are inherently factual in nature. The Parties therefore would have to complete a lengthy and extensive trial on the merits.

Any trial would likely last between one to two weeks and involve numerous attorneys and witnesses, the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the expenditure of enormous amounts of judicial and counsel resources. Even if successful at trial, there most certainly would be appeals which would deny Plaintiffs any recovery for years. Avoiding such unnecessary expenditure of time and resources clearly benefits all parties and the Court. *See Hoaglan*, 2022 WL 2703854, at *3; *see also Smith v. TradeGlobal, LLC*, No. 1:19-CV-192, 2020 WL 5797897, at *2 (S.D. Ohio Sept. 29, 2020) (recognizing that "[c]ontinued litigation would involve considerable expenditures of time and resources of the parties and the Court. If this case were to continue, the parties would expend significant time and money prosecuting the litigation through dispositive motions, trial, and possible appeals.").

The value of an immediate recovery here outweighs the mere possibility of future relief after protracted and expensive litigation.

### 2. The Risks of Establishing Liability and Establishing Damages

Plaintiffs' likelihood of success on establishing liability and the amount of damages they would be awarded is uncertain, further suggesting that this Settlement is fair and appropriate. Plaintiffs assert, and Defendant denies, that they are owed compensation due to Defendant's alleged violation of the FLSA. The range of possible recovery—if any—by Plaintiffs is disputed.

Plaintiffs maintain that they were misclassified as exempt from the protections of the FLSA. Defendant has alleged, as an affirmative defense pursuant to 29 U.S.C. § 213, that Plaintiffs were properly classified as exempt employees because they were paid on a salaried basis and their primary job duties were administrative in nature. Misclassification cases are often hotly contested and involve fact specific evaluations regarding Plaintiffs' job duties and responsibilities. *See* Exhibit 1.

> To qualify as administratively exempt: (1) the employee must meet the salary requirement; (2) the employee's primary duty must consist of the performance of office or non-manual work directly related to the management or general business

8

operations of the employer or the employer's customers; and (3) the employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a). An employee's "primary duty" is "the principal, main, major or most important duty that the employee performs." § 541.700(a).

*Rego v. Liberty Mut. Managed Care, LLC*, 367 F. Supp. 3d 849, 854 (E.D. Wis. 2019). Because of the inherently factual nature of this misclassification case, it is unlikely that it would be resolved via dispositive motion, and would thus proceed to trial before a jury.  Though Plaintiffs' conditional certification motions were ultimately denied, the declarations provided by Plaintiffs highlight the type of factual dispute at issue. *Compare* ECF Nos. 20-1 through 20-4 *with* ECF No. 32.  While Plaintiffs are confident in the validity of their claims, they recognize that fact disputes, like this one, are risky to try to a jury and that they risked receiving a verdict in favor of Defendant.

Even if Plaintiffs succeed on the merits of their claims, which would require substantial additional time and an exercise of resources by both sides, the specific amount of their recovery is unknown. While Plaintiffs' actual damages are subject to calculation because of the nature of the misclassification claims at issue, the amount of time for which they are able to recover, and whether they received liquidated damages remain uncertain. Defendant also claimed that any damages owed to Plaintiffs are subject to offset. Should Defendant prevail on that issue, Plaintiffs could face a reduction in their recovery even if they prevailed on the issue of liability. *See* ECF No. 13, p. 27. Thus, this proposed Settlement is a fair and reasonable settlement in relation to the potential risks and recovery in this case.

      **3.**       **The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Risks of Litigation**

This Circuit has previously advised district courts to "give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate." *Isby v. Bayh*, 75 F. 3d 1191, 1200 (7th Cir. 1996). Plaintiffs' Counsel and Plaintiffs are of the opinion that this proposed Settlement

is a fair and reasonable compromise. *See* Exhibit 1. Each Plaintiff has now executed the Settlement Agreement. *Id.* Plaintiffs' Counsel have extensive experience in handling large nationwide FLSA collective actions and they have thoroughly investigated and analyzed the claims alleged in these actions. *See id.*

Here, Plaintiffs are receiving over 72% of the damages they could receive if they were successful on all issues after trial. Specifically, the Net Settlement Amount provides that each Plaintiff will recover 72% of their available damages (including liquidated damages) utilizing the maximum three-year statute of limitations, based on an average 45-hour work week.[6] This amount reflects the net amount they will actually receive should the Settlement Agreement be approved. Plaintiffs' Counsel believe this represents an exceptional settlement for Plaintiffs. *Id.* Based on Plaintiffs' Counsel's extensive experience litigating claims brought under the applicable law they have made informed judgments regarding the Settlement and believe the Settlement is fair, reasonable and adequate. *See id.*

This Court has previously found that a settlement amount of approximately one half of the maximum damages that plaintiffs "could receive if they succeeded on their claims but did not obtain liquidated damages . . . is a fair discount based on the uncertainty in the law in this area." *Allen v. Lanier, Inc.*, Case. No. 3:22-cv-00268-jdp (W.D. Wis. May 15, 2023). The Court observed that "[a] discount is also reasonable because the case has settled early in the proceedings, and more litigation would raise costs, including potentially from experts . . . ." *Id.*

## C.    The Service Award for Named Plaintiff Should be Approved

The Settlement Agreement contemplates providing a Service Award to Plaintiff Loch in the amount of $2,500.00. *See* ECF No. 67, ¶ 9.1(b). This payment is in addition to the individual settlement

---

[6] Plaintiffs' Counsel used a 45-hour work-week in calculating damages because it reflected the average number of hours worked by each Plaintiff according to the time records provided by Defendant and information provided by Plaintiffs in conversations with counsel.

payment Plaintiff Loch will receive as her *pro rata* share of the Net Settlement Amount. Plaintiff Loch worked diligently throughout this Lawsuit and undertook significant reputation risk to aid the Collective. Exhibit 1, at ¶ 24. Plaintiff Loch was the individual who first spoke with Plaintiffs' Counsel and brought the potential FLSA violations to light. She was willing to affix her name to the pleadings in the public domain, forever typing herself as a plaintiff in a lawsuit against her former employer. In fact, a google search of Plaintiff Loch's name returns information regarding this lawsuit on the second "page" of "hits."[7] *Id.*

From the initial information Plaintiff Loch provided regarding her employment, Plaintiffs' Counsel were able to file this lawsuit seeking collective-wide relief. Though conditional certification was ultimately denied, through Plaintiff Loch's efforts, an additional six individuals opted-in to this lawsuit as Party Plaintiffs.  Plaintiff Loch made herself readily available to Plaintiffs' Counsel, provided a declaration in support of conditional certification, and provided information critical to completing the damage model in this case.

Courts may make separate awards to class representatives in recognition of their risks taken, time expended, and benefits to the class. *See Espenscheid v. Direct Sat USA, LLC*, 688 F.3d 872, 876–77 (7th Cir. 2012). The role of Plaintiff Loch in this litigation was crucial as she initiated the Lawsuit, conferred with Plaintiffs' Counsel, provided valuable insight into the Defendant's practices and operations, and continued to regularly communicate with Plaintiffs' Counsel throughout the Lawsuit and subsequent settlement negotiations. *See* Exhibit 1.

This payment comports with service payments recently awarded to the named plaintiff(s) in other FLSA actions. *See Soto v. Wings 'R Us Romeoville, Inc.*, No. 15 C 10127, 2018 WL 1875296, at *3 (N.D. Ill. April 16, 2018) (approving service award of $7,500 to the named plaintiff); *see also Knox v. Jones Group*, No. 15-cv-1738 SEB-TAB, 2017 WL 3834929, at *3 (S.D. Ind. Aug. 21, 2017) (approving

---

[7] https://www.govinfo.gov/app/details/USCOURTS-wiwd-3_22-cv-00213

service awards of $7,500 each to two Named Plaintiffs); *Briggs v. PNC Financial Services Group, Inc.*, No. 1:15-cv-10447, 2016 WL 7018566, at * 3 (N.D. Ill. Nov. 29, 2016) (approving $12,500 service award each to two plaintiffs in FLSA settlement); *Castillo v. Noodles & Company*, No. 16-cv-03036, 2016 WL 7451626, at *6-8 (N.D. Ill. Dec. 23, 2016) (approving $10,000 service award for four named plaintiffs in FLSA wage action).

The requested Service Award in the amount of ████████ for Plaintiff Loch represents less than 3% of the Gross Settlement Fund, which is a reasonable percentage. *See Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 civ 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb 9, 2010) (finding that service awards totaling approximately 11% of total recovery are reasonable); R*eyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2009 WL 5841177, at *8, *13 (S.D.N.Y. May 28, 2009) (finding awards of $7,500 each to three named plaintiffs, representing approximately 3 percent of the total $710,000 settlement amount, was reasonable).

The Service Award is reasonable and should be approved.

**E.     Plaintiffs' Counsel's Attorneys' Fees and Costs Should be Approved**

Defendant has agreed to pay Plaintiffs' Counsel's attorneys' fees and costs as set forth in the Settlement Agreement. The attorneys' fees were separately negotiated from the damages available to Plaintiffs. Specifically, Plaintiffs ask this Court to approve an award of attorneys' fees of approximately one third of the Gross Settlement Amount, inclusive of litigation costs and expenses.[8] *See* ECF No. 67, ¶ 2.7. Defendant does not object to the Court approving such an award of attorneys' fees and expenses.

The attorney's fees provision of the FLSA enables plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby helps to ensure enforcement of the

---

[8] The total fees *and* expenses together are less than 40% of the Total Settlement Fund.

substantive provisions of the Act. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

Reasonable attorneys' fees may be determined using the common fund method. Under the common fund doctrine, "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The doctrine "is based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691–92 (7th Cir. 2007) (citing *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1988)). In deciding fee awards in common fund cases, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton*, 504 F.3d at 692 (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)).

"The Seventh Circuit has recognized that 'most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis' and that the 'typical contingent fee is between 33 and 40 percent.'" *Neeck v. Badger Brothers Moving, LLC*, No. 19-cv-834-wmc, at *3 (W.D. Wisc. May 14, 2021) (citing *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998)). Additionally, market rates for similar FLSA/Rule 23 hybrid class actions are "within the 30% to 40% range." *Rogers-Coxhead v. Glass Nickel Pizza Co.*, No. 16-cv-706-wmc, 2017 WL 6375969, at *2 (W.D. Wisc. Nov. 13, 2017). Here, Plaintiff's requested fee amount is 33% of the Total Settlement Fund, and that amount is well within the typically awarded percentage of the fund. *See id.*

Plaintiffs' Counsel is entitled to a 40% fee request under their Contract with the Named Plaintiff. Exhibit 1. This request for 33% of the common fund is well within what is commonly approved in this Circuit and District and should be approved. *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566,

13

572 (7th Cir. 1992) (recognizing the "usual range for contingent fees is between 33 and 50 percent");

*Guzman v. National Packaging Services Corp.*, No. 19-cv-1722-pp, 2022 WL 2657261, at *5–6 (approving

a 36% fee award).

This Court ordered Plaintiffs' Counsel to provide information regarding their rates and

hours involved to enable it to conduct a lodestar cross check. Plaintiffs' Counsel's has worked 100.6

hours in this matter, for a total fee amount of $48,530.00. *See* Exhibit 1, ¶¶ 15–16. After the exercise

of billing judgment, and after deducting time spent on unsuccessful motions, Plaintiffs' Counsel's

adjusted lodestar is $27,560.00. *Id.*

| Time-Keeper | Time | Rate | Fee | Adjusted Fee |
|---|---|---|---|---|
| Lauren Braddy | 32.6 | $550.00 | $17,930.00 | $3,080.00 |
| Carter Hastings | 68 | $450.00 | $30,600.00 | $24,480.00 |
| **Totals** | **100.6** | | **$48,530.00** | **$27,560.00** |

*See id.* Plaintiffs' Counsels' rates are also reasonable rates for FLSA practitioners in the Western

District of Wisconsin.[9] *See id.*

Not included in the lodestar are expenses in the amount of $1,431.22. *Id.* Plaintiffs'

Counsel's adjusted lodestar, plus expenses, totals $31,741.22. Under the terms of the settlement,

however, Plaintiffs' Counsel is only requesting ▮▮▮▮▮▮▮▮, which is inclusive of costs and expenses.

Plaintiffs' Counsel's requested fee is therefore reasonable under the percentage of the fund

method of calculation, as supported by a lodestar cross check.

---

[9] Even utilizing the lower rate of $450.00, Plaintiffs' Counsel's adjusted lodestar is still $27,000.00.

## IV.
## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order: (1) finding that the Settlement Agreement is a fair and reasonable resolution of a *bona fide* dispute; (2) approving the service award for Named Plaintiff; (3) approving the requested attorneys' fees and expenses; and (4) dismissing the underlying claims with prejudice.

Date:   June 24, 2025                    Respectfully submitted,

                                         **HAWKS QUINDEL S.C.**
                                         Attorney for Plaintiffs

                                         /s/*SUMMER H. MURSHID*
                                         **Summer H. Murshid**
                                         SBN: 1075404
                                         5150 N. Port Washington Road, Ste 243
                                         Milwaukee WI, 53217
                                         Telephone: (414) 271-8650
                                         Facsimile: (414) 207-6079
                                         Email: smurshid@hq-law.com

                                              ***Local Counsel***


                              By:   /s/ *Clif Alexander*
                                    **Clif Alexander** (admitted *pro hac vice*)
                                    Texas Bar No. 24064805
                                    clif@a2xlaw.com
                                    **Austin W. Anderson** (admitted *pro hac vice*)
                                    Texas Bar No. 24045189
                                    austin@a2xlaw.com
                                    **Carter T. Hastings** (admitted *pro hac vice*)
                                    Texas Bar No. 24101879
                                    carter@a2xlaw.com
                                    **ANDERSON ALEXANDER, PLLC**
                                    101 N. Shoreline Blvd, Suite 101
                                    Corpus Christi, Texas 78401
                                    Telephone: (361) 452-1279
                                    Facsimile: (361) 452-1284

**CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2025, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Western District of Wisconsin, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Clif Alexander*
Clif Alexander